# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 26, 2014

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

148512

In re:

HONORABLE DENNIS M. WILEY          SC:  148512
Berrien County District Court          RFI No.  2013-20302

BEFORE THE JUDICAL TENURE COMMISSION

_____/

On order of the Court, the Judicial Tenure Commission has issued a Decision and Recommendation for Order of Discipline, and the Honorable Dennis M. Wiley has consented to the Commission's findings of fact, conclusions of law, and recommendation of a public censure.

As we conduct our de novo review of this matter, we are mindful of the standards set forth in *In re Brown*, 461 Mich 1291, 1292-1293 (2000):

> [E]verything else being equal:
>
> (1)     misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
>
> (2)     misconduct on the bench is usually more serious than the same misconduct off the bench;
>
> (3)     misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
>
> (4)     misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
>
> (5)     misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;
>
> (6)     misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;
>
> (7)     misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.

In this case those standards are being applied to the following findings of fact of the Judicial Tenure Commission, which adopted the admissions contained in the settlement agreement. We adopt them as our own.

1. Prior to December 4, 2012, LaRue Ford communicated with staff of the Berrien County Trial Court regarding outstanding fines that she owed which had resulted in the suspension of her Michigan driver's license.

2. Pursuant to direction by the court staff, Ms. Ford paid the balance that was found by the staff to be owed.

3. On December 4, 2012, Ms. Ford went to the Niles Division of the Berrien County Trial Court to investigate why a "hold" remained on her driver's license.

4. The staff in the clerk's office reviewed Ms. Ford's case history and discovered that a $45 reinstatement fee in Case No. 2004-403400-ST still had not been paid.

5. Ms. Ford became upset, as she believed that the court staff in St. Joseph had previously advised her that all fees had been paid and the hold on her driver's license should have been lifted. She was also upset by the possible imposition of a credit card service fee.

6. Several Niles Division court clerks, if called as witnesses, would testify that Ms. Ford used the term "fuckers" or "motherfuckers" on one or two occasions when dealing with them.

7. None of the clerks ever felt threatened, or that they were in danger, when dealing with Ms. Ford.

8. Ms. Ford never interfered with the clerks' ability to perform their duties while she was in the courthouse. However, clerks would testify that she was disruptive, and they had to pay extra attention to her to make sure she did not get out of control.

9. On December 4, 2012, Respondent [5th District Court Judge Dennis M. Wiley] was presiding in the Niles Division of the Berrien County Trial Court.

10. On that day, Respondent was in the non-public office area of the court, and overheard court clerk Katie Pugh tell court office manager Carol Brohman that Ms. Ford had called them "fuckers' or "motherfuckers." If called as a witness, Ms. Pugh would testify that Ms. Ford had said this "after all the help we gave her."

11. The conversation between Ms. Pugh and Ms. Brohman did not initially involve Respondent.

12. When Respondent overheard the discussion, Respondent approached the individuals and asked Ms. Pugh to describe the events to Respondent.

13. When Ms. Pugh recounted the events, she reported that Ms. Ford had referred to the clerk staff as "fuckers" and/or "motherfuckers."

14. Ms. Pugh also reported that Ms. Ford was expected to return to the courthouse to pay a fee to have the hold on her license removed.

15. Ms. Pugh did not tell Respondent that she or any other court staff had felt threatened by Ms. Ford during the incident, or that Ms. Ford had in any way interfered with the regular operation of the court during the incident. If called as a witness, Respondent would testify that the clerks appeared to him to be upset and distracted from their duties.

16. Respondent directed that Ms. Ford be brought before him in his courtroom when she returned to the courthouse.

17. Respondent did not discuss the preparation of a petition for order to show cause/bench warrant regarding Ms. Ford's conduct with any court employee at that time.

18. When Ms. Ford returned on December 4, 2012, and after she paid the outstanding fee, Respondent's court bailiff brought her to Respondent's courtroom, in accordance with Respondent's directive.

19. At that time, the petition had not yet been prepared.

20. Respondent arraigned Ms. Ford for contempt of court outside of his presence, based only on the unsworn conversation he had heard between Ms. Pugh and Ms. Brohman, his own observations, and his conversation with Ms. Pugh.

21. Respondent did not disclose that he had had the previously mentioned conversation with Ms. Pugh.

22. Respondent did not disqualify himself, or raise the issue of his possible disqualification, based on his receipt of the information communicated in the previously mentioned conversation with Ms. Pugh.

23. Respondent set December 18, 2012 for a hearing on the contempt charge.

24. Respondent set a bond of $5,000/10%.

25. Ms. Ford did not post bond and spent the night in jail.

26. Ms. Ford posted $500 bond on December 5, 2012 and was released from custody.

27. On December 18, 2012, Ms. Ford appeared for the contempt hearing.

28. At that proceeding, she was represented by attorney Shannon Sible, who was assigned counsel.

29. Mr. Sible requested that the contempt hearing be adjourned, as he wanted additional time to review the law applicable to the matter.

30. Respondent adjourned the matter and increased Ms. Ford's bond from $5,000/10% to $5,000/cash or surety, after her counsel requested that she be allowed to travel to Arizona and go to work as a long haul truck driver. This was the first time that Respondent heard that Ms. Ford lived in Arizona.

31. The court returned the $500.00 Ms. Ford had posted with the court. The $500.00 check was maintained with Ms. Ford's belongings in the jail until her release on December 28, 2012.

32. Ms. Ford was represented at all times and had access to a list of bondsmen.

33. John Targowski, a cooperating attorney with the American Civil Liberties Union, filed an appearance on behalf of Ms. Ford on December 28, 2012.

34. Mr. Targowski filed an emergency application for leave to appeal and a petition for review of her bond in the Berrien County Trial Court, Circuit Division that same day.

35. The appeal was assigned to Judge Charles LaSata, who was not available that day.

36. The case was referred to Chief Judge Alfred Butzbaugh, who granted leave to appeal and revised the bond to the original $5,000/10%. No transcript or video recording exists of any proceeding before Judge Butzbaugh.

37. Ms. Ford was released on December 28, 2012.

38. On December 28, 2012, Susan Akens, an Enforcement Officer in the Berrien County Trial Court collections office, sent Respondent an e-mail regarding her contact with Ms. Ford on several dates during 2012 which reflected a negative impression, and attached notes that she maintained regarding those incidents.

39. Ms. Ford, through counsel, filed a motion to disqualify Respondent and a motion to stay proceedings in the Berrien County District Court on January 2, 2013.

40. On January 3, 2013, Respondent sent a reply e-mail to Ms. Akens, instructing her to send her notes to the Berrien County Prosecuting Attorney's office, as the notes could "show a pattern of contemptuous behavior" and advising her that the prosecuting attorney might want her to testify about Ms. Ford's conduct.

41. Ms. Akens sent the notes to the prosecuting attorney via e-mail, and copied Respondent on the message.

42. The Berrien County Prosecutor declined to prosecute the contempt matter.

43. On or about January 3, 2013, Respondent instructed Ms. Brohman to prepare a sworn statement regarding her contact with Ms. Ford on December 4, 2012, which Ms. Brohman did.

44. Respondent also instructed Ms. Brohman to have all court clerks who had had any interaction with Ms. Ford on December 4, 2012 prepare sworn statements about their contact with her.

45. Court clerks Katie Pugh, Sarah Belter, Julie Lear, and Toni Hall prepared sworn statements pursuant to that directive.

46. Respondent presided over a hearing on the motion for disqualification on January 8, 2013.

47. At that hearing, Respondent did not disclose his communication with Ms. Brohman regarding his request for Ms. Brohman and the other court clerks to prepare sworn statements regarding their contact with Ms. Ford on December 4, 2012.

48. Respondent also did not disclose his communication with Ms. Akens.

49. Ms. Ford, through counsel, filed a motion to dismiss the contempt charge in the Niles Division of the Berrien County District Court on January 7, 2013.

50. Respondent denied Ms. Ford's motion for disqualification at the January 8, 2013, hearing, and referred it to the Berrien County Trial Court Chief Judge for review.

51. Respondent suspended the remaining proceedings (including consideration of the motion for stay, motion to dismiss, and the contempt hearing) to allow for the Chief Judge's review of the disqualification issue.

52.   On January 11, 2013, Judge LaSata issued a decision on Ms. Ford's appeal and motion to dismiss, dismissing the contempt charge without prejudice.

The standards set forth in *Brown* are also being applied to the following Judicial Tenure Commission legal conclusions, to which respondent stipulated and which we adopt as our own:

A.   Respondent violated the Michigan Code of Judicial Conduct, Canon 3A(1), in that he did not faithfully execute the law and maintain his professional competence when he commenced indirect contempt proceedings based only on unsworn conversations with his staff; and

B.   Respondent violated the Michigan Code of Judicial Conduct, Canon 3A(4), in that he received communications regarding Ms. Ford's conduct from court staff, after the commencement of proceedings, and directed staff to provide the information to the prosecuting attorney and directed staff to prepare affidavits concerning the events of December 4, 2012 and did not advise Ms. Ford's counsel of these communications.

The Commission also concludes, and we agree, that Respondent's conduct constitutes:

C.   Misconduct in office, as defined by the Michigan Constitution of 1963, as amended, Article 6, § 30, and MCR 9.105;

D.   Conduct clearly prejudicial to the administration of justice, as defined by Const 1963, art 6, § 30, and MCR 9.105;

E.   Failure to establish, maintain, enforce, and personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the Code of Judicial Conduct, Canon 1;

F.  Irresponsible or improper conduct that erodes public confidence in the judiciary, in violation of the Code of Judicial Conduct, Canon 2A;

G.  Conduct involving impropriety and the appearance of impropriety, in violation of the Code of Judicial Conduct, Canon 2A;

H.  Failure to conduct oneself at all times in a manner that would enhance the public's confidence in the integrity and impartiality of the judiciary, contrary to the Code of Judicial Conduct, Canon 2B; and

I.  Conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach, in violation of MCR 9.104(A)(2).

After review of the Judicial Tenure Commission's decision and recommendation, the settlement agreement, the standards set forth in *Brown*, and the above findings and conclusions, we ORDER that the Honorable Dennis M. Wiley be publicly censured. This order stands as our public censure.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 26, 2014



s0319

Clerk